Filed 7/17/26  P. v. Fee CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>TIMOTHY CHARLES FEE,<br><br>    Defendant and Appellant. | F089693<br><br>(Super. Ct. No. 2066877)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Kellee C. Westbrook, Judge.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Darren K. Indermill and Robert C. Nash, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Timothy Charles Fee appeals from resentencing under Penal Code[1] section 1172.75. On appeal, defendant contends the trial court abused its discretion by denying his request to dismiss his five-year serious felony enhancement under section 1385. We affirm.

## FACTUAL SUMMARY[2]

### I. Prosecution's case-in-chief

On August 8, 2016, at approximately 10:00 or 10:30 p.m., David H. (see Cal. Rules of Court, rule 8.90(b)) informed his wife that he was "going camping." At approximately 11:30 p.m., he texted his adult daughter and arranged to visit her the following day. David departed in his white 1999 Dodge Durango.

On the morning of August 9, 2016, David's wife texted David, but she did not receive a response. Initially, she "figured he was out of the [cell phone coverage] area." However, when she did not hear back from him for a few days, she became concerned.

On August 11, 2016, David's decomposed body was discovered in the Delta-Mendota Canal. Dr. Sung-Ook Baik, a forensic pathologist, conducted the autopsy. He observed fractured thyroid cartilage on the right side of David's neck, which "indicate[d] there was pressure around the neck." In addition, the lungs were filled with water. Given the degree of damage to the thyroid cartilage, Baik opined the cause of death was "more likely" strangulation than drowning. He did not rule out the possibility that David may have only been rendered unconscious before he was placed in the canal. A toxicology report confirmed the presence of methamphetamine, but Baik believed that drug intoxication was "not directly related to the cause of death."

---

[1] All further unspecified statutory references are to the Penal Code.

[2] The following facts are taken from our opinion in defendant's previous appeal. (*People v. Fee* (July 29, 2022, F078512, F081881) [nonpub. opn.].)

On August 12, 2016, police officers came across David's Durango in a parking lot near the intersection of Coolidge Avenue and McHenry Avenue in Modesto. Three individuals stood next to the sport utility vehicle (SUV): defendant, codefendant Jairo Ramirez, and a female. When the officers approached the group, defendant headed toward a nearby fast-food restaurant while Ramirez and the female went in a different direction. The officers eventually apprehended defendant, who possessed the keys to the Durango and a money clip that belonged to David.

During a subsequent search of the Durango, officers found a "military-style hunting knife" on the driver's seat; various store receipts; a pawn shop slip with Ramirez's name; and a camouflage backpack. Inside the backpack were three cylinders, each of which were wrapped in cellophane. The cylinders contained various substances, including heroin, marijuana, methamphetamine, and tobacco.

The Stanislaus County Sheriff's Department obtained surveillance footage from various businesses. Footage recorded on August 9, 2016, showed: (1) sometime after 3:00 p.m., defendant and Ramirez visited a pawnshop, where the former bought a hunting knife and the latter pawned a one-ounce piece of gold that belonged to David for $1,000; (2) at 3:48 p.m., David's Durango was parked outside a convenience store, where defendant purchased lottery tickets; (3) at approximately 4:00 p.m., defendant parked the Durango, entered a department store, and purchased "two bundles of braided rope"; (4) sometime before 9:00 p.m., defendant and Ramirez entered a different department store; and (5) at around 9:30 p.m., the Durango was parked outside a retail store, where defendant—accompanied by Ramirez—made an undisclosed purchase. Footage recorded on August 10, 2016, showed that defendant visited an automotive parts retailer and bought a tow hitch. Footage recorded on August 11, 2016, showed that—at approximately 2:00 a.m.—defendant parked the Durango, carried the camouflage backpack, and entered a motel.

Detective Rodriguez of the Stanislaus County Sheriff's Department interviewed defendant on August 14, 2016.  According to defendant, he encountered David—an acquaintance—"purely by chance" at "the airport."  (Capitalization omitted.)  Defendant then called Ramirez and informed him that he contacted "an old boy" who "bragg[ed] about shipping large amounts of dope" and "was dumb enough to let him borrow his truck or ride his truck."  Defendant and David "went to go get [Ramirez]" (capitalization omitted) and the three traveled to a park to look through the Durango.  There, David indicated that he "didn't want to be there anymore" and an argument ensued.  The dispute continued inside the Durango.  As defendant was driving, the exchange between David and Ramirez in the rear of the vehicle became more heated.  David "was tellin [Ramirez] that there was no more drugs in the truck and all this other shit," but Ramirez "didn't believe him."  (Capitalization omitted.)  "[T]he more [David] talked, the more [Ramirez] got pissed off" and the Durango "bounced all over the fuckin road."  (Capitalization omitted.)  Defendant "turned the stereo up louder so [he] couldn't fuckin hear it."  (Capitalization omitted.)  Eventually, Ramirez "climbed up [to the front passenger seat] through the middle" and defendant heard "moaning and gurgling noises" behind him.  (Capitalization omitted.)  Per Ramirez's directions, defendant stopped near a wooden bridge traversing the Delta-Mendota Canal.  Defendant and Ramirez removed David from the vehicle.  Although David "was unconscious" and "was breathing" (capitalization omitted), defendant and Ramirez placed him into the canal.

At trial, the parties stipulated that Ramirez pled guilty to the unlawful killing and felony robbery of David on August 8, 2016.

## II.  Defense's case-in-chief

Defendant testified that he first met Ramirez in prison in 2009 and the two became close friends.  In 2015, after defendant was released, he "got back in touch" with Ramirez.

On August 8, 2016, defendant came across David at a liquor store in Modesto's "Airport District." He knew David "from drug sales in that general area" and learned that he was making a profit "mailing drugs back east." Defendant, who was "going back to prison" for a gun-related offense, wanted to collaborate with David to "make some money real quick" "to support [him]self the next year or so." He wanted to include Ramirez, who was also going back to prison and "had money issues."

Defendant and David picked up Ramirez in the Durango. Thereafter, defendant "ended up just driving around." All three were consuming drugs and alcohol. Initially, the men got along. Later, however, David and Ramirez started arguing about "a small quantity [of drugs] that they couldn't find" in the vehicle. At some point, Ramirez "jump[ed] from the back of the truck up to the front and told [defendant], 'Shit went out bad.' " Ramirez stated that David was dead and the body needed to be disposed. Defendant, who "had no knowledge [of] what went on in the back until [Ramirez] jumped up in the front," "freaked out." The Durango "ended up at the canal" and defendant "help[ed] [Ramirez] dump David's body into the canal."

Defendant admitted that he intended to sneak the cylinders of drugs—also known as "keister pack[s]"—into jail.

## PROCEDURAL SUMMARY

**Charges, Jury Verdict, Sentence, and Direct Appeal**

Defendant was charged with first degree murder (§ 187, subd. (a)), namely, murder committed in the perpetration of a robbery and/or kidnapping (§ 189, subd. (a)). The information further alleged that he (1) had been released on bail prior to a judgment becoming final on an earlier felony offense (§ 12022.1); (2) was previously convicted of kidnapping, a serious felony (§ 667, subd. (a)) and a qualifying "strike" under the Three Strikes law (§ 667, subd. (d)); and (3) served a prior separate prison term (§ 667.5, former subd. (b)).

In 2018, a jury convicted defendant of murder (§ 187, subd. (a)) and found true that the murder was committed during a robbery. Defendant admitted that the offense was committed while released on bail (§ 12022.1). In a bifurcated proceeding, the court found true defendant had a prior strike conviction (§ 667, subd. (d)), a prior serious felony conviction (§ 667, subd. (a)), and a prior prison term (§ 667.5, former subd. (b)).

The trial court sentenced defendant to an aggregate sentence of 58 years to life, consisting of: 25 years to life for murder, which was doubled to 50 years to life under the Three Strikes law, plus five years for the prior serious felony conviction, two years for the on-bail enhancement, and one year for the prior prison term enhancement.

On December 12, 2018, defendant filed a notice of appeal (F078512). On October 24, 2019, we granted defendant's motion to stay his appeal and remanded the matter for the trial court to conduct proceedings pursuant to section 1172.6 (formerly § 1170.95).

**Section 1172.6 Petition**

On October 6, 2020, the trial court denied defendant's section 1172.6 petition following an evidentiary hearing. Defendant filed a notice of appeal (F081181). We granted defendant's motion to consolidate his appeals (F078512/F081181).

On July 29, 2022, we struck the prior prison term enhancement and ordered the trial court to prepare an amended abstract of judgment, but we otherwise affirmed. Following our opinion, the trial court issued an amended abstract of judgment that no longer reflected the prior prison term enhancement.

**Resentencing Pursuant to Section 1172.75**

Defendant was identified by the Department of Corrections and Rehabilitation as having a sentence that included a prior prison term enhancement. Defendant filed his sentencing memorandum on November 25, 2024, in which he requested the court consider dismissing his prior strike conviction (§ 1385, subd. (a)), and his on-bail and prior serious felony conviction enhancements (§ 1385, subd. (c)). As to the

enhancements, defendant noted the factors weighing in favor of dismissal under section 1385 included that "multiple enhancements were imposed" (§ 1385, subd. (c)(2)(B)), and that "the offense was connected to mental illness or childhood trauma" (§ 1385, subd. (c)(2)(D), (E).) The People filed a sentencing memorandum in opposition. The trial court held a resentencing hearing on March 13, 2025, and took the matter under submission.

On April 14, 2025, the trial court issued a written ruling denying defendant's request for recall and resentencing. The ruling noted the applicable law and stated:

> "Here, [defendant] was convicted of murder, a violation of Penal Code section 187. The victim in the case had been robbed/kidnapped, strangled, and his body had been dumped in a canal. The physical evidence indicated that the victim most likely died prior to his body being placed in the canal. At a minimum, he was unconscious at the time of the transport to the water. At trial, [defendant] claimed that the victim was still alive when he put the victim's body into the canal. He heard moaning and gurgling during the strangulation by his co-responsible and did nothing to stop it. The appellate court confirmed the trial court's finding that [defendant] 'was clearly an aider and abettor in the case' and a 'major participant' in the robbery.

> "At the time of the commission of the offense in 2016, [defendant] was on bail pending firearm charges. In 2005, he suffered a 'strike' prior for kidnapping, a violation of section 207. He had not remained free of incarceration for any substantial period of time.

> "In 2019 and 2022, [defendant] completed various college and technical classes. He has worked with canines that aid those with post-traumatic stress disorder. Additionally, he received a certificate for completing an alternative to violence course. However, after completing the course, he engaged in a physical altercation with another inmate.

> "This court declines to exercise its discretion to grant the requested relief due to the callousness exhibited during the perpetration of the offense, [defendant]'s record at the time of conviction and his continued violence (although not substantial). The court commends [defendant] for beginning the process to turn his life around by educating himself and engaging in prison programs. While mitigating, at this time, it is not compelling enough to overcome the overwhelming aggravating factors in this case. Because the court declines to exercise its discretion, the court need not

7.

determine whether imposing a lesser [sentence] would endanger public safety."

Defendant filed a timely notice of appeal of the April 14, 2025 order.

## DISCUSSION

Defendant contends the trial court abused its discretion by denying his request to dismiss his prior serious felony enhancement and on-bail enhancement pursuant to section 1385, subdivision (c).

### I.      Section 1172.75

The Legislature passed Senate Bill No. 136 (2019–2020 Reg. Sess.), effective January 1, 2020, which amended section 667.5, subdivision (b) to limit prior prison term enhancements to sexually violent offenses as defined in Welfare and Institutions Code section 6600, subdivision (b).  (Stats. 2019, ch. 590, § 1; § 667.5, subd. (b); *People v. Lopez* (2019) 42 Cal.App.5th 337, 340–341.)  The Legislature subsequently passed Senate Bill No. 483 (2021–2022 Reg. Sess.), which made this change retroactive by adding section 1171.1 (Stats. 2021, ch. 728, §§ 1, 3), which was later renumbered as section 1172.75 (Stats. 2022, ch. 58, § 12).

Under section 1172.75, "[a]ny sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of [s]ection 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code is legally invalid." (*Id*., subd. (a).)  Once a trial court has confirmed that a defendant's current judgment includes a prior prison term enhancement that is now legally invalid, it "shall recall the sentence and resentence the defendant."  (*Id*., subd. (c).)  When resentencing the defendant, the court "may consider postconviction factors" (*id*., subd. (d)(3)), and "shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing" (*id*., subd. (d)(2)).

8.

## II. The Trial Court Did Not Abuse Its Discretion

### A. Applicable Law

Effective January 1, 2022, Senate Bill No. 81 (2021–2022 Reg. Sess.) amended section 1385 to add subdivision (c), which requires a trial court to dismiss an enhancement "if it is in the furtherance of justice to do so." (§ 1385, subd. (c)(1); Stats. 2021, ch. 721, § 1.) Section 1385, subdivision (c)(2), provides that the court, in exercising its discretion, must consider and "afford great weight to evidence offered by the defendant to prove" any of nine listed mitigating factors (see § 1385, subd. (c)(2)(A)–(I)), "unless the court finds that dismissal of the enhancement would endanger public safety" (§ 1385, subd. (c)(2)). The listed mitigating factors include where multiple enhancements were alleged in a single case, and the enhancement was based on a prior conviction that was over five years old. (§ 1385, subd. (c)(2)(B), (H).)

"[A]bsent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present." (*People v. Walker* (2024) 16 Cal.5th 1024, 1029.) "In other words, if the court does not find that dismissal would endanger public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*Ibid.*)

### B. Standard of Review

We review a trial court's denial of a motion to dismiss a sentence enhancement under section 1385 for abuse of discretion. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377; *People v. Knowles* (2024) 105 Cal.App.5th 757, 765 ["A court

abuses its sentencing discretion when it acts arbitrarily and capriciously, relies on improper matter in reaching its decision, or is unaware of the scope of its discretion so that it does not exercise informed discretion at all."].)

### C. Analysis

Defendant contends the trial court abused its discretion by not dismissing the enhancements. According to defendant, the court should have determined it was in the interest of justice to dismiss the enhancements because of the presence of multiple mitigating factors. Even assuming his claim was not forfeited in any respect, it fails on the merits.

The trial court's written ruling shows the court was aware it had the discretion to dismiss the five-year serious felony conviction and on-bail enhancements. The court considered the circumstances of the offense, including that defendant was on bail pending other charges at the time of the commission of the offense. The court noted defendant completed various college and technical classes as well as programs while in prison, and recognized its mitigating effect. Nevertheless, the court determined it was not compelling enough to overcome the overwhelming aggravating factors, namely, "the callousness exhibited during the perpetration of the offense, [defendant]'s record at the time of conviction and his continued violence (although not substantial)." The record does not affirmatively demonstrate that the court misunderstood the law or applied the relevant factors incorrectly. (See *People v. Brugman* (2021) 62 Cal.App.5th 608, 638 ["In the absence of evidence to the contrary, we presume that the trial court considered all of the relevant factors and properly applied the law."].)

Relying on *People v. Gonzalez* (2024) 103 Cal.App.5th 215 (*Gonzalez*), defendant argues the trial court erred by declining to resentence him without considering whether defendant would be a danger to public safety when released decades in the future.

In *Gonzalez*, the defendant was sentenced to an indeterminate term of 50 years to life for first degree murder, plus 25 years to life for a section 12022.53, subdivision (d) enhancement. (*Gonzalez*, *supra*, 103 Cal.App.5th at p. 220.) The trial court interpreted section 1385, subdivision (c)(2) as "requir[ing] [it] to decide whether the defendant 'currently at the time of sentencing represent[s] a danger to society.' " (*Gonzalez*, at p. 227.) The court denied the defendant's request to dismiss the enhancement because it found the defendant " 'presently' " represented a danger to society. (*Id*. at p. 224.) The Court of Appeal reversed, holding the trial court erred by considering only "whether the defendant *currently* poses a danger." (*Id.* at p. 228.) The *Gonzalez* court explained that the trial court should have considered how dismissal of enhancements would impact the length of the defendant's sentence or parole eligibility, because a defendant "who has no prospect of release from prison until he is elderly" may pose less of a risk to public safety. (*Ibid*.)

We find *Gonzalez* unpersuasive on the record before us. In denying defendant's request, the trial court here did not consider whether defendant posed a danger to public safety. Instead, the court first determined dismissal of the enhancements would not be in furtherance of justice and declined to exercise its discretion. Thus, unlike in *Gonzalez*, the trial court's ruling here did not rest on an incorrect understanding of the law regarding whether defendant posed a danger to public safety. Moreover, even without a finding that dismissal would endanger public safety, the court was not precluded from denying defendant's request to dismiss the enhancements. (*People v. Walker*, *supra*, 16 Cal.5th at p. 1029.) On this record, defendant fails to persuade us that the court's ruling was so irrational or arbitrary that no reasonable person could agree with it.

## **DISPOSITION**

The trial court's April 14, 2025 order is affirmed.


DETJEN, J.

WE CONCUR:


LEVY, Acting P. J.


SNAUFFER, J.

12.